United States District Court
District of Massachusetts

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> ) <br> v. ) <br> ) <br> MICHAEL SOARES and RASHEED ) <br> MARSMAN, ) <br> ) <br> Defendants. ) | Criminal Action No. <br> 06-10042-NMG |

MEMORANDUM & ORDER

GORTON, J.

The defendants in this criminal action, Michael Soares ("Soares") and Rasheed Marsman ("Marsman"), were each charged in February, 2006, as felons in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). The Court held a hearing on August 17 and 18, 2006 with respect to defendants' motions to suppress evidence against them. After consideration of written and oral arguments offered in support of and opposition to defendants' motions, the Court will deny both motions to suppress.

I. **Background**

At approximately 1:15 a.m. on Tuesday, December 6, 2005, two Boston police officers, Linwood Jenkins and Jason Reid ("Off'r Jenkins" and "Off'r Reid", respectively), were patrolling the

Theater District area of Boston in an unmarked car and in plainclothes. The area, which experiences a significant amount of street crime such as drugs, prostitution, fights and, to a lesser extent, gun violations, was, on the night in question, fairly well lit and had moderate traffic. While driving on Boylston Street across from the Boston Common, the officers saw a green Lexus pull away from the curb without headlights, a deduction they drew from the absence of any rear lights. They followed the automobile to the intersection of Boylston and Tremont streets whereupon they noticed that the left taillight and/or brake light was inoperative when the car slowed before turning right onto Tremont Street.[1]

The officers decided to effect a traffic stop based upon the operator's failure to activate the headlights and the defective tail/brake light. After turning the corner behind the Lexus, they activated the cruiser's blue lights and siren and notified dispatch that they were stopping an automobile containing three occupants. Those three were later identified as the driver, Allen Lee ("Lee"), defendant Soares in the front passenger seat and defendant Marsman in the back on the passenger side. From their cruiser, the officers noticed that Lee and Soares moved as though they were each placing something on the floor of the front

---

[1] Although the parties dispute whether the dysfunctional light was a taillight or a brake light, the Court concludes that the distinction is immaterial.

seat.

As a routine matter under the circumstances, other police officers in the area came to assist Off'rs Reid and Jenkins when they heard the call to dispatch. Thus, Officer Lippolis ("Off'r Lippolis") and Sergeant Brooks ("Sgt Brooks") arrived at the scene in separate vehicles after the Lexus had been pulled over. All four cars were parked parallel to the curb on Tremont Street but Sgt Brooks's cruiser had approached from the opposite direction and its headlights were directed toward the front of the Lexus.

Off'rs Jenkins and Reid approached the Lexus and Jenkins asked the driver for his license and registration. Off'r Reid stood at the passenger side with his gun unholstered at a "low ready" position in which it was clearly visible to Soares. Although Lee was cooperative for the most part, Off'r Jenkins testified that he was disrespectful and complained that the officers had pulled the car over only because its occupants were black. Off'r Reid testified that Soares was quite agitated. He was rocking back and forth, verbally abusive and kept moving his hands around despite Off'r Reid's repeated orders to keep his hands where the officer could see them. Marsman was apparently calm and quiet in the back seat.

When he had obtained Lee's license and registration, Off'r Jenkins returned to the cruiser to check their status. Off'r

Reid, still standing on the passenger side of the Lexus with a flashlight, noticed near Lee's feet a small jar that he recognized as the kind of jar commonly used to carry marijuana. After confirming that Lee's license and registration were in order, Off'r Jenkins returned to the car to read Lee the citation. When Lee again complained that there was no justification for the stop, the officer offered to show him the offending tail/brake light. Lee stepped out of the car and consented, upon Off'r Jenkins's request, to be pat-frisked.

In the meantime, Off'r Reid moved to the driver's side of the car to look more closely at the suspicious jar. He picked it up and put it in his pocket as Off'r Lippolis and Sgt Brooks stood at the passenger side. When Soares continued to move erratically in disobedience to Off'r Reid's orders, he was ordered out of the car by the other officers. Off'r Lippolis began to pat-frisk Soares but Soares was uncooperative and kept pushing the officer's hands away from his midsection. Soares was then moved to a wall where Off'r Lippolis completed the pat-frisk and discovered a hard object at Soares's waistband. He called out "gun" whereupon Soares began to struggle but was soon subdued with the assistance of Sgt Brooks. Those officers retrieved from Soares a pistol that was loaded with five rounds of ammunition.

As the interaction with Soares was occurring, Off'r Jenkins ordered Lee to the ground and Off'r Reid told Marsman to stay

put, having noticed that he was fidgety and moving around in the back seat of the Lexus. Just then, Marsman opened the rear car door and ran away, whereupon Off'rs Jenkins and Reid gave chase 20 or 30 feet behind. Marsman ran awkwardly, with his arms held stiffly in front of him as though trying to hold something. After Marsman turned a corner and ran between a wall and a parking lot, Off'r Jenkins heard a sound resembling metal hitting pavement. He stopped at the corner briefly to ensure his safety and then proceeded to chase Marsman who was now running at full stride with his arms pumping. When Off'r Reid reached the corner, he saw a pistol in plain view on the ground near the wall. No people or cars were present in the parking lot. By this time, other police officers were in the area and rendered assistance which resulted in Marsman's apprehension within a few minutes. He was found hiding in a prone position under some bushes.

After the defendants were arrested, the Lexus was searched and its contents were delivered to the station. In addition to the small jar that Off'r Reid took from the driver's side floor, a slightly larger jar of marijuana, about twice as tall as the smaller jar, was found in the car's center console. At the station, Off'r Jenkins searched a bag that had been in the back seat of the Lexus and found three additional jars of marijuana, each the same size as the larger jar found in the car's console.

According to a police report prepared soon after the event, five bottles containing a leaf-like substance believed to be marijuana were taken from the vehicle, one found in the center console and four inside Lee's bag in the back seat. The report does not mention the small bottle found on the floor of the front seat as part of the search inventory but it does describe (in a different part of the report) Off'r Reid's observation of that bottle. Thus, the report contains a discrepancy concerning the number and location of bottles found. Off'rs Reid and Jenkins both testified that the report was inaccurate insofar as it stated that four bottles were found in the bag taken from the car. Off'r Jenkins explained that he may have mistakenly described the bottle found in the console as one of the bottles found in the bag because all four bottles were the same size.

## II. **Motions to Suppress**

Soares and Marsman have each filed motions to suppress the firearms, ammunition and all other evidence flowing from the initial stop of the Lexus.

### A. **Arguments**

Soares asserts that his motion to suppress should be allowed on the grounds that 1) there was no reasonable justification for the stop of the Lexus and 2) there was no probable cause to pat-frisk him. With respect to his first contention, he argues that there is no reasonable subjective or objective evidence that a

traffic violation occurred. He contends that the officers were not in a position to view the headlights of the Lexus when it pulled away from the curb and that the citation itself is suspect. As to his second contention, Soares asserts that there was no justification to pat-frisk him because the officers had no reason to believe that contraband would be found in the car, that Soares was armed or that their safety was compromised. Soares avers that the failure to list the small jar in the inventory of evidence raises substantial doubts about Off'r Reid's description of events.

Marsman similarly contends that the initial stop of the Lexus was unreasonable. Specifically, he argues that there is no reasonable, credible evidence that a traffic violation occurred. Furthermore, he contends that, even if a minor traffic violation occurred, the detention of the Lexus and its passengers exceeded the scope of the stop.

The government opposes both defendants' motions, maintaining that the officers had probable cause to pull the Lexus over and that their conduct did not exceed the scope of that stop. With respect to Soares, the government contends that his pat-frisk was warranted by a reasonable belief that criminal activity was underway and that the officers' safety was at risk. With respect to Marsman, the government further argues that, even if the initial stop was unlawful, the evidence against him should not be

suppressed because its taint was dissipated by the intervening circumstance of his flight.

### B. **Legal Principles**

Where a challenge is made to the legality of a "brief investigatory stop ... that fall[s] short of traditional arrest", the government bears the burden of proving that the officer had a "reasonable suspicion that criminal activity [might] be afoot". United States v. Monteiro, 447 F.3d 39, 43 (1st Cir. 2006) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). A car is lawfully stopped where there is probable cause for believing that a traffic violation occurred regardless of the officers' subjective motivation for the stop. See Whren v. United States, 517 U.S. 806 (1996). Nor is it unconstitutional for officers to require the occupants of a vehicle to exit it pending completion of a lawful stop. Maryland v. Wilson, 519 U.S. 408, 415 (1997).

The lawful detention of a car does not, in itself, however, sustain a constitutional search of its occupants. See United States v. McKoy, 428 F.3d 38, 39 (1st Cir. 2005) ("It is insufficient that the stop itself is valid; there must be a separate analysis of whether the standard for pat-frisks have been met."). Thus, officers remain subject to the standard set forth in Terry v. Ohio, 392 U.S. 1, 24 (1968), whereby a pat-frisk for weapons is permitted if "the officer is justified in

believing that the person is armed and dangerous to the officer or others". McKoy, 428 F.3d at 39 (quoting United States v. Romain, 393 F.3d 63, 71 (1st Cir. 2004)).

The lawfulness of a pat-frisk is to be judged by the "totality of the circumstances to see whether the officer had a particularized, objective basis for his or her suspicion". Id. (citing Arvizu, 534 U.S. at 273). The "character of the neighborhood" is but one factor to be considered in assessing the officers' safety concerns. United States v. Villanueva, 15 F.3d 197, 199 (1st Cir. 1994) (citing Brown v. Texas, 443 U.S. 47 (1979)). Other factors include 1) the probability that weapons would be present given the type of crime committed, 2) the time of day, 3) the number of officers present compared to the number of suspects and 4) the conduct and appearance of the suspects. See McKoy, 428 F.3d 40; see also United States v. Cruz, 156 F.3d 22, 26 (1st Cir. 1998). Although a pat-frisk may be unwarranted when a stop initially occurs, subsequent events may give rise to probable cause as the stop proceeds. See United States v. Bizier, 111 F.3d 214, 218-19 (1st Cir. 1997).

Absent reasonable safety concerns that would justify a pat-frisk, a warrantless search requires that officers have probable cause to arrest the suspect for a crime. See Maryland v. Pringle, 540 U.S. 366 (2003) (holding that officers had probable cause to arrest the front-seat passenger of a vehicle for

possession of narcotics found in the back seat based upon the "reasonable inference from the facts that [all of the occupants of the vehicle] had knowledge of, and exercised dominion and control over, the cocaine").

### C. **Analysis**

In ruling upon defendants' motions to suppress, the Court must evaluate the constitutionality of three separate events: the initial stop of the vehicle, the pat-frisk of Soares and the detention of Marsman.

The Court concludes, first, that the initial stop of the Lexus was valid. Driving without headlights or with a defective tail/brake light is a violation of Massachusetts motor vehicle law. Off'rs Reid and Jenkins provided credible testimony that the Lexus was being operated without its headlights and that at least one rear light was dysfunctional.

With respect to the pat-frisk, Soares contends that the situation in this case is analogous to McKoy, supra, in which the First Circuit Court of Appeals affirmed the suppression of narcotics found pursuant to a pat-frisk after a lawful traffic stop. In the McKoy case, the defendant was detained by plainclothes officers for a parking and license plate violation. The stop took place in the afternoon in a purportedly high-crime area and as the officers approached McKoy's vehicle, they saw him move toward the center console of his car. When they reached the

-10-

vehicle and saw that McKoy seemed nervous, they ordered him out of the car to be pat-frisked whereupon they discovered he was carrying illegal narcotics. In considering McKoy's motion to suppress the drugs, the district court concluded, and the circuit court agreed, that the combination of McKoy's nervousness, his movement toward the center console and the neighborhood in which the stop took place did not justify a pat-frisk because deciding otherwise would "come[] too close to allowing an automatic frisk of anyone who commits a traffic violation in a high-crime area". McKoy, 428 F.3d at 40.

The similarities between the McKoy case and Soares's situation are too superficial to bolster his contentions. Here, the officers were justified in perceiving some risk to their safety given the time of night and the number of occupants in the Lexus. Moreover, unlike the McKoy case, the suspicion in this case increased over time such that, even if a pat-frisk was not justifiable when the Lexus was initially stopped, it was warranted by the time Soares was removed from the car. Cf. Bizier, 111 F.3d at 218-19 (holding that probable cause to arrest developed after an initial traffic stop because of observations made during the course of the stop). By the time that Soares stepped out of the vehicle, Off'r Reid had noticed the suspicious jar and Soares had disobeyed numerous orders to stay still and to keep his hands visible. Those circumstances, when combined with

the factors present at the time of the stop, made it objectively reasonable for the officers to feel concern for their safety and to suspect that Soares might be armed.

Marsman stands in an even more precarious legal position because 1) the retrieval of the firearm attributed to him did not result from a pat-frisk, 2) his flight was adequate justification for the officers' pursuit and 3) the gun they found was in plain view.  He contends that evidence against him should be suppressed, nevertheless, because his detention in the Lexus exceeded the scope of the initial traffic stop and was therefore unreasonable.  In that regard, he avers that this case is similar to United States v. Sparks, 301 F. Supp. 2d 76 (D. Mass. 2004), in which the district court allowed a motion to suppress evidence obtained during a pat-frisk of an automobile passenger because he was detained after the purpose of the initial traffic stop had ended and the officers had no reason to believe that the passenger had committed a crime or was dangerous.

The Court recognizes a significant distinction between the present matter and the Sparks case.  Unlike the situation in Sparks where the passenger was detained and pat-frisked after the driver had been issued a citation for the initial traffic stop, in this case, Marsman fled the vehicle while the stop was still in progress.  Although Off'r Jenkins had apparently written the citation by the time Marsman fled, he had not yet issued it and

was, in fact, showing Lee the reason for the citation when Marsman ran. Furthermore, the intervening circumstance of Off'r Reid noticing the jar of marijuana in the car constituted additional justification for the detention of Marsman for it was reasonable to attribute that contraband to Marsman. See Pringle, 540 U.S. at 371-74.

## ORDER

For the foregoing reasons, Defendant Soares's Motion to Suppress (Docket No. 29) is **DENIED** and Defendant Marsman's Motion to Suppress (Docket No. 31) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: September 13, 2006